No. 14-15046

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

**MARK ELLIS**,
individually and on behalf of all others similarly situated,
*Plaintiff-Appellant*,

**v.**

**THE CARTOON NETWORK INC.**,
*Defendant-Appellee.*

_____

On Appeal from the United States District Court
For the Northern District of Georgia, Atlanta Division,
Case No. 1:14-cv-00484-TWT
The Honorable Thomas W. Thrash

---

### PLAINTIFF-APPELLANT'S OPENING BRIEF

---

Ryan D. Andrews
randrews@edelson.com
Roger Perlstadt
rperlstadt@edelson.com

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, IL 60654
Tel: 312.589.6370 / Fax: 312.589.6378

*Counsel for Plaintiff-Appellant*

*Ellis v. Cartoon Network*
No. 14-15046

# CERTIFICATE OF INTERESTED PERSONS
# AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, counsel for Plaintiff-Appellant Mark Ellis hereby submit their Certificate of Interested Persons and Corporate Disclosure Statement, certifying that the following persons have an interest in the outcome this appeal:

1.   Andrews, Ryan D. (attorney for Plaintiff-Appellant in appellate court proceeding)

2.   Bakowski, Alan W. (attorney for Defendant-Appellee in district court proceeding and in appellate court proceeding)

3.   Balabanian, Rafey, S. (attorney for Plaintiff-Appellant in district court proceeding)

4.   Ellis, Mark (Plaintiff-Appellant)

5.   Frankel, Jonathan S. (attorney for Defendant-Appellee in district court proceeding)

6.   Historic TW, Inc. (parent company of Turner Broadcasting System, Inc.)

7.   Jordan, Jennifer Auer (attorney for Plaintiff-Appellant in district court proceeding and in appellate court proceeding)

*Ellis v. Cartoon Network*
No. 14-15046

8.   Lamberth, James A. (attorney for Defendant-Appellee in district

      court proceeding and in appellate court proceeding)

9.   Landis, Jeffrey G. (attorney for Defendant-Appellee in district

      court proceeding)

10.  Larry, James Dominick (attorney for Plaintiff-Appellant in district

      court proceeding)

11.  Perlstadt, Roger (attorney for Plaintiff-Appellant in appellate

      court proceeding)

12.  Richman, Benjamin H. (attorney for Plaintiff-Appellant in district

      court proceeding)

13.  TEN Network Holding, Inc. (f/k/a TEN Investment Co., Inc.,

      parent company of The Cartoon Network, Inc.)

14.  The Cartoon Network, Inc. (Defendant-Appellee)

15.  Thrash, Hon. Thomas W. (United States District Judge for the

      Northern District of Georgia)

16.  Time Warner Inc., NYSE: TWX (parent company of Historic TW,

      Inc.)

17.  Turner Broadcasting System, Inc. (parent company of Turner

      Entertainment Networks, Inc.)

*Ellis v. Cartoon Network*
No. 14-15046

18.    Turner Entertainment Networks, Inc. (parent company of TEN

Network Holding, Inc.)

19.    Zwillinger, Marc. J. (attorney for Defendant-Appellee in district

court proceeding and in appellate court proceeding)

No entity or person owns more than 10% of Time Warner's issued

outstanding common stock.

Dated: January 30, 2015                         s/ Roger Perlstadt
                                                *One of Plaintiff-Appellant's*
                                                *Attorneys*

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant respectfully requests that oral argument be heard in this case. This appeal meets the standards for oral argument set forth in Fed. R. App. P. 34(a)(2) because (A) it is not frivolous, (B) it presents a matter of first impression in this (and every) circuit, and (C) this Court's decisional process would be significantly aided by oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ................................................................. C-1

STATEMENT REGARDING ORAL ARGUMENT ................................... i

TABLE OF CONTENTS ........................................................................... ii

TABLE OF CITATIONS ......................................................................... iv

JURISDICTIONAL STATEMENT ........................................................... 1

ISSUE PRESENTED FOR REVIEW ........................................................ 1

STATEMENT OF THE CASE ................................................................. 2

SUMMARY OF THE ARGUMENT ......................................................... 6

ARGUMENT ........................................................................................... 8

I.    The VPPA Protects Consumers' Privacy in Their Viewing Habits by Prohibiting the Disclosure of Such Information to Data Analytics Companies Like Bango ......................................... 10

II.    Cartoon Network Disclosed Personally Identifiable Information in Violation of the VPPA ............................................ 12

    A.    The VPPA's definition of "personally identifiable information" is intentionally open-ended .............................. 13

    B.    Information is personally identifiable where, as here, the recipient of a disclosure knows to whom it refers .......... 14

    C.    The district court erred in holding that a disclosure must, on its face, identify an individual ................................ 17

III.    Other Federal Statutes and Regulations Treat Unique Identification Numbers as Personally Identifiable Information ....................................................................................... 24

CONCLUSION ........................................................................... 28

ADDENDUM .............................................................................. 30

CERTIFICATE OF COMPLIANCE ......................................... 35

CERTIFICATE OF SERVICE ................................................. 36

# TABLE OF CITATIONS

**United States Supreme Court Cases**

*Clackamas Gastroenterology Assocs. P.C. v. Wells*,
    538 U.S. 440 (2003) ........................................................................ 14

*Olmstead v. U.S.*,
    277 U.S. 438 (1928) .......................................................................... 8

**United States Court of Appeals Cases**

*Bororian v. Mueller*,
    616 F.3d 60 (1st Cir. 2010)............................................................. 27

*Cranberg v. Consumers Union of U.S., Inc.*,
    756 F.2d 382 (5th Cir. 1985) .......................................................... 18

*Croixland Properties Ltd. P'ship v. Corcoran*,
    174 F.3d 213 (D.C. Cir. 1999) ........................................................ 15

*Edwards v. Prime, Inc.*,
    602 F.3d 1276 (11th Cir. 2010) ................................................. 5, 16

*Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*,
    771 F.3d 1274 (11th Cir. 2014) ....................................................... 1

*Pruitt v. Comcast Cable Holdings, LLC*,
    100 F. App'x 713 (10th Cir. 2004).................................................. 23

*Ruzicka v. Conde Nast Publications*,
    999 F.2d 1320 (8th Cir. 1993) .................................................. 15-16

*Shotz v. City of Plantation*,
    344 F.3d 1161 (11th Cir. 2003) ..................................................... 24

*Speaker v. U.S. Dep't of Health & Human Servs.*,
    623 F.3d 1371 (11th Cir. 2010) ..................................................... 17

*Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*,
    164 F.3d 186 (3d Cir. 1998) ............................................................ 18


**United States District Court Cases**

*Eichenberger v. ESPN, Inc.*,
    C14-463 TSZ (W.D. Wash. Nov. 24, 2014) ..................................... 24

*In re Hulu Privacy Litig.*,
    No. C 11-03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28,
    2014) ............................................................................................ 23-24

*In re Nickelodeon Consumer Privacy Litig.*,
    MDL No. 2443 (SRC), 2015 WL 248334 (D.N.J. Jan. 20,
    2015) ................................................................................................. 24

*Locklear v. Dow Jones & Co.*,
    No. 1:14-CV-00744-MHC (N.D. Ga. Jan. 23, 2015) ....................... 24


**Statutory Provisions**

15 U.S.C. § 278g-3(a)(3) ....................................................................... 27

15 U.S.C. § 6501(8) .............................................................................. 25

15 U.S.C. § 6502(a)(1) .......................................................................... 25

*18 U.S.C. § 2710 ................................................................................... 1

*18 U.S.C. § 2710(a)(3) ...................................................................... 9, 13

*18 U.S.C. § 2710(b)(1) ....................................................................... 2, 9

20 U.S.C. § 1232g(b)(1) ........................................................................ 26

28 U.S.C. § 1291 .................................................................................... 1

28 U.S.C. § 1331 .................................................................................... 1

42 U.S.C. § 1320d-6(a)(3) ................................................................. 25

42 U.S.C. § 14132(b)(3)(D) ............................................................. 26

47 U.S.C. § 551(e) ........................................................................... 23


## Federal Regulations

*16 C.F.R. § 312.2 ........................................................................... 25

*34 C.F.R. § 99.3 ............................................................................. 26

*45 C.F.R. § 164.514(b)(2)(i)(M) ................................................... 25


## Legislative History

*Senate Report 100-599 (1998) .............................................. 8, 10-11, 13

*Video and Library Privacy Protection Act of 1988: Joint Hearings
on H.R. 4947 and S. 2361 Before the Subcommittee on Courts,
Civil Liberties, and the Administration of Justice of the House
Committee on the Judiciary and the Subcommittee on Technology
and the Law of the Senate Committee on the Judiciary,*
    100th Cong. 18 (Aug. 3, 1988) ............................................... 8


## Other Authorities

Emily Nussbaum, *Castles in the Air: The Gorgeous Existential
Funk of "Adventure Time"*,
    The New Yorker (Apr. 21, 2014), *available at*
    http://www.newyorker.com/magazine/ 2014/04/21/castles-in-
    the-air ............................................................................................. 2

Google Play, Advertising ID,
    http://support.google.com/googleplay/android-developer/
    answer/6048248?hl=en (last visited Jan. 28, 2015) ....................... 12

Harry M. Stevens, Wikipedia,
        http://en.wikipedia.org/wiki/Harry_M_Stevens (last visited
        Jan. 28, 2015) .................................................................................. 22

HowManyofMe.com,
        http://howmanyofme.com (last visited Jan. 28, 2015) ................... 21

*Identity Definition*, Merriam-Webster Online,
        http://www.merriam-webster.com/dictionary/identity (last
        visited Jan. 28, 2015) ..................................................................... 19

Michael Dolan, *The Bork Tapes*,
        Washington City Paper (Sept. 25, 1987), *available at*
        http://www.theamericanporch.com/ bork5.htm ............................. 20

Michael Dolan, *The Bork Tapes Saga*,
        The American Porch, http://www.theamericanporch.com/
        bork2.htm (last visited Jan. 28, 2015)............................................. 20

*National Institute of Standards & Technology, *Guide to
Protecting the Confidentiality of Personally Identifiable
Information (PII)*,
        Special Publication 800-122 (Apr. 2010), *available at*
        http://csrc.nist.gov/publications/nistpubs/800-122/sp800-
        122.pdf .......................................................................................... 27

Neil M. Richards, *The Perils of Social Reading*,
        101 Georgetown Law Journal 689 (2013) ....................................... 10

Paul M. Schwartz & Daniel J. Solove, *The PII Problem: Privacy
and a New Concept of Personally Identifiable Information*,
        86 New York University Law Review 1814 (2011)......................... 14

*Restatement (Second) of Torts § 564 ................................... 14-15, 18, 19

Thomas Summer, *Remember, Remember the 5th of November:
Google Gets Anonymous with New Advertiser ID*,
        AppLift (Nov. 8, 2013), http://www.applift.com/blog/google-
        gets-anonymous-with-new-advertiser-id.html............................... 12

## JURISDICTIONAL STATEMENT

The district court had original jurisdiction over this case pursuant to 28 U.S.C. § 1331 because Plaintiff-Appellant alleged a violation of the federal Video Privacy Protection Act, 18 U.S.C. § 2710. *See Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 771 F.3d 1274, 1280 (11th Cir. 2014).

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 because Plaintiff-Appellant appeals the district court's dismissal of the case with prejudice, a final judgment that disposed of all parties' claims. (Dkt. 35, 36.) That judgment was entered on October 8, 2014, and Plaintiff-Appellant timely filed his Notice of Appeal on November 5, 2014. (Dkt. 37.)

## ISSUE PRESENTED FOR REVIEW

Does an individual's video viewing history coupled with a unique identification number constitute "personally identifiable information" under the Video Privacy Protection Act, 18 U.S.C. § 2710, when disclosed to someone who uses that number to automatically identify the individual?

## STATEMENT OF THE CASE

Plaintiff-Appellant Mark Ellis ("Plaintiff" or "Ellis"), on behalf of a class of similarly situated consumers, filed suit against The Cartoon Network, Inc. ("Cartoon Network") alleging a violation of the Video Privacy Protection Act ("VPPA"), which prohibits video providers like Cartoon Network from disclosing "personally identifiable information" about their consumers. 18 U.S.C. § 2710(b)(1).

Cartoon Network is an Atlanta-based media company that produces several (mostly animated) television programs. (Dkt. 23 at 1-2, 4.)[1] It delivers this video programming to consumers through its namesake cable television channel as well as through a proprietary application for use on mobile devices like smartphones and tablets (the "CN App"). (*Id.* at 1-2.) Consumers with a mobile device running Google's Android operating system can download the CN App from the Google Play Store. (*Id.* at 4-5.) The CN App allows consumers like Ellis

---

[1]    Cartoon Network's programming ranges from traditional animated fare like *The Looney Tunes Show* to more complex offerings such as *Adventure Time*, which was recently described by a television critic as "one of the most philosophically risky and, often, emotionally affecting shows on TV." Emily Nussbaum, *Castles in the Air: The Gorgeous Existential Funk of "Adventure Time"*, The New Yorker (Apr. 21, 2014), *available at* http://www.newyorker.com/magazine/2014/04/21/castles-in-the-air. (*See also* Dkt. 23 at 4.)

to use their smartphone or tablet to watch Cartoon Network live or videos of Cartoon Network programs from its library. (*Id.* at 4.)

The alleged violation of the VPPA concerns what the CN App does behind the scenes. (Dkt. 23 at 5-12.) Each time a consumer like Ellis watches a television show or video clip through the CN App, Cartoon Network, via the CN App, automatically sends a record of that activity to a data analytics company called Bango. (*Id.* at 2, 6-7.) Specifically, Cartoon Network sends to Bango a complete record of every video clip and television show watched by a consumer on the CN App, along with what is known as that consumer's Android ID. (*Id.*)[2]

An Android ID is a unique identification number that acts like a social security number for a mobile device running Google's Android operating system, but instead of being generated by the Social Security Administration, it is generated by Google (through the Android mobile operating system) when a user first activates the device. (Dkt. 23 at 2 n.1, 7 n.4.) Also like a social security number, the unique Android identification number remains constant throughout the device's

---

[2]    At no time did Cartoon Network seek or obtain its users' consent to disclose their personal viewing records to Bango or any other third party. (Dkt. 23 at 5, 22.)

lifetime. (*Id.*) In addition, even if an Android device has multiple users, each user is assigned a separate unique identification number. (*Id.* at 9.) Thus, like a social security number, an Android ID uniquely distinguishes one person (the user of that Android ID) from all others. (*Id.*)

Bango is a "big data" analytics company whose business model centers on tracking consumers' online behavior and is founded on its ability to automatically correlate Android IDs with actual people to form comprehensive profiles about consumers' entire digital lives. (Dkt. 23 at 2-3, 6-12.) These "digital dossiers" contain, among other things, individuals' names, addresses, phone numbers, email addresses, demographics, locations, purchase histories, and other online activities. (*Id.* at 10-12.) Consequently, each time Cartoon Network disclosed to Bango what videos a consumer watched, Bango automatically matched the provided Android ID with the consumer's actual identity, adding that viewing history to that individual's profile. (*Id.* at 12, 20-21.)

Cartoon Network moved to dismiss Ellis's Amended Class Action Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing (1) that Ellis failed to allege a cognizable injury

sufficient to establish Article III standing, (2) that Ellis was not a "consumer" under the VPPA, and (3) that Cartoon Network did not disclose any "personally identifiable information" under the VPPA. (Dkt. 26.) While the district court properly held that Ellis had Article III standing and was a "consumer" under the VPPA, it ultimately concluded that Cartoon Network's disclosures to Bango did not constitute "personally identifiable information." (Dkt. 35.) In particular, despite the fact that Plaintiff alleged that Bango automatically matched consumers' actual names, email addresses, phone numbers, and demographic and other information to their Android ID numbers (Dkt. 23 at 10-12, 21), the district court held that "[w]ithout more, an Android ID does not identify a specific person." (Dkt. 35 at 9.) The district court dismissed Ellis's complaint with prejudice (*id*. at 10; Dkt. 36), and this appeal timely followed (Dkt. 37).

The standard of review of a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) is *de novo*, taking the factual allegations in the complaint as true and construing them in the light most favorable to the plaintiff. *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010).

## SUMMARY OF THE ARGUMENT

The district court erred in holding that Cartoon Network's disclosure of Ellis's—and every other CN App user's—viewing history coupled with their Android ID number to Bango did not violate the VPPA. One of the primary reasons Congress passed the VPPA was to prohibit exactly the conduct at issue here: video providers contributing consumers' viewing records to companies creating individual profiles of consumer behavior. The statute does so by prohibiting the disclosure of "personally identifiable information," a term to which Congress gave an intentionally non-exhaustive definition.

In light of this open-ended definition, it is appropriate to look to the common law to determine when information is personally identifiable. Under the long-standing common law rule, information identifies a person when the recipient of that information understands to whom it refers. Here, Bango identifies individuals based on their Android ID number, and thus understands precisely to whom Cartoon Network is referring when it discloses consumers' viewing histories linked to their Android ID numbers.

The district court's holding was apparently based on its belief that

6

a disclosure must, *on its face*, identify the individual. With all due respect, however, that belief is mistaken. It is not necessary that *anyone* who saw the disclosure could identify the individual so long as, like here, *the recipient* of the disclosure could identify the individual from the disclosed information. Every disclosure has a recipient, and that recipient may have and use information outside the four corners of a disclosure to identify the individual to which it refers. Put simply, context matters.

In addition to being supported by the text and purpose of the VPPA, as well as the common law's understanding of what it means to identify a person, several other federal privacy statutes treat unique identifying numbers—including, specifically, device identification numbers like an Android ID—as personally identifiable information.

For all these reasons, and as explained more fully below, the district court's dismissal of Plaintiff's complaint should be reversed.

## ARGUMENT

It really isn't anybody's business what books or videos somebody gets. It doesn't make any difference if somebody is up for confirmation as a Supreme Court Justice or they are running the local grocery store. It is not your business. It is not my business. It is not anybody else's business, whether they want to watch Disney or they want to watch something of an entirely different nature. It really is not our business.

—Senator Patrick Leahy[3]

The VPPA is a privacy statute. It protects the choices we make in which movies, television programs, and videos we watch. It prohibits the companies from whom we obtain these materials from disclosing those choices to others without our consent. It prohibits disclosing those choices to the press, to our neighbors, to our employers, to our adversaries, and, relevant here, to those compiling digital dossiers of our consumer behavior.

---

[3]    *Video and Library Privacy Protection Act of 1988: Joint Hearing on H.R. 4947 and S. 2361 Before the Subcomm. on Courts, Civil Liberties, and the Admin. of Justice of the H. Comm. on the Judiciary and the Subcomm. on Tech. and the Law of the S. Comm. on the Judiciary*, 100th Cong. 18 (Aug. 3, 1988) (statement of Sen. Leahy). Senator Leahy also properly noted that "[p]rivacy is not a conservative or a liberal or moderate issue. It is an issue that goes to the deepest yearnings of all Americans . . . . We want to be left alone." S. Rep. 100-599, at 6 (1998), *reprinted in* 1988 U.S.C.C.A.N. 4342-1, 4342-6; *see also id.* (citing *Olmstead v. U.S.*, 277 U.S. 438, 478 (1928) (Brandeis, J. dissenting)).

The statute implements these protections by prohibiting video providers from knowingly disclosing "personally identifiable information" about their consumers, including "information which identifies a person as having requested or obtained specific video materials or services." 18 U.S.C. §§ 2710(a)(3), (b)(1). Here, Cartoon Network violated the VPPA by disclosing its users' private video viewing choices to data analytics company Bango.

Specifically, as detailed above, each time a consumer views a video clip or television show on the CN App, a record of that viewing activity—along with the consumer's Android ID number—was sent to Bango. Because Bango identifies consumers based on their Android ID number and thus knows exactly to which consumer each disclosure refers, Cartoon Network's disclosures violated the VPPA.

While the district court held that Cartoon Network's disclosures did not constitute personally identifiable information because an Android ID number "is not . . . akin to a name" and does not "in its own right, without more" identify a specific person (Dkt. 35 at 7-10), that holding was in error, and the dismissal of Plaintiff's complaint should therefore be reversed. An Android ID number uniquely points to a

9

single individual, and where—as here—that individual's viewing

history and Android ID number are disclosed to someone who knows

from that number which individual it is, personally identifiable

information was disclosed in violation of the VPPA.

I.    **The VPPA Protects Consumers' Privacy in Their Viewing Habits by Prohibiting the Disclosure of Such Information to Data Analytics Companies Like Bango.**

Colloquially known as the "Bork Bill," the VPPA was passed in

1988 following the publication of the video rental records of then-

Supreme Court nominee Robert Bork's family by a reporter who had

obtained them from a Washington D.C. video store. *See* S. Rep. 100-599,

at 5; Neil M. Richards, *The Perils of Social Reading*, 101 Geo. L.J. 689,

694-95 (2013). While the bipartisan outrage over the disclosure of Judge

Bork's video rental records provided the spark, the VPPA was not

enacted only to protect public figures. *See* Sen. Rep. 100-599, at 6

(noting that similar, though less well publicized, incidents of disclosure

had occurred, including, for example, as part of a child custody fight).

Indeed, one of the major motivations behind enactment of the VPPA

was Congressional concern over the creation of individual digital

dossiers of ordinary consumers' behavior. As one senator presciently

explained:

> In an era of interactive television cables, the growth of computer checking and check-out counters, or security systems and telephones, all lodged together in computers, it would be relatively easy at some point to give a profile of a person and tell what they buy in a store, what kind of food they like, *what sort of television programs they watch*, who are some of the people they telephone. I think that is wrong. I think that really is Big Brother, and I think it is something that we have to guard against.

*Id.* at 5-6 (emphasis added). Similarly, another senator noted:

> The advent of the computer means not only that we can be more efficient than ever before, but that we have the ability to be more intrusive than ever before. Every day Americans are forced to provide to businesses and others personal information without having any control over where that information goes. These records are a window into our loves, likes, and dislikes.

*Id.* at 6-7. As the Senate Report on the VPPA recognized, "[p]rivate commercial interests want personal information to better advertise their products." *Id.* at 7.

Creating digital dossiers on consumers to help companies better advertise their products is *precisely* what data analytics companies like Bango do, and the VPPA was expressly intended to guard against video providers like Cartoon Network contributing "what sort of television programs [its consumers] watch" to such dossiers. *Id.* at 5-6.

11

Nevertheless, Cartoon Network *did* contribute such information to Bango. It provided Bango with its users' viewing histories coupled with their Android ID numbers, numbers that Bango uses to track individual's consumer behavior.[4]

## II. Cartoon Network Disclosed Personally Identifiable Information in Violation of the VPPA.

The district court held that the disclosures here did not violate the VPPA because a unique identification number is not "akin to a name" and that "[w]ithout more, an Android ID does not identify a specific person." (Dkt. 35 at 9.) But whether a disclosure includes a name or whether the information alone—on its face—identifies a specific person

---

[4]      Google recognized it was a problem that companies were using Android ID numbers to track individuals' consumer behavior, and in its most recent update to Android, has prohibited companies from using Android ID for advertising purposes in their apps. Instead, Google has introduced an "Advertising ID" that apps may use to track consumers. Unlike Android ID, consumers can easily reset their Advertising ID—preventing apps from tracking their behavior over time—or can completely opt out of allowing apps to access the Advertising ID at all. *See generally* Google Play, Advertising ID, http://support.google.com/googleplay/android-developer/answer/6048248?hl=en (last visited Jan. 28, 2015); Thomas Summer, *Remember, Remember The 5th Of November: Google Gets Anonymous With New Advertiser ID*, AppLift (Nov. 8, 2013), http://www.applift.com/blog/google-gets-anonymous-with-new-advertiser-id.html ("The Android ID is being replaced by an anonymous identifier 'Advertising ID', which ensures that users cannot be tracked down to the individual device."). Apple has made an equivalent change to the iPhone and iPad operating systems. *See id.*

is not the proper test. To the contrary, where the recipient of a disclosure understands to whom the information refers, the information is personally identifiable. And here, because Bango automatically identifies individuals by their Android ID number, Cartoon Network's disclosures of viewing history coupled with Android ID numbers were disclosures of personally identifiable information in violation of the VPPA.

## A.    The VPPA's definition of "personally identifiable information" is intentionally open-ended.

The VPPA does not exhaustively define "personally identifiable information" and instead simply states in the definitions section of the statute that "the term 'personally identifiable information' *includes* information which identifies a person as having requested or obtained specific video materials or services." 18 U.S.C. § 2710(a)(3) (emphasis added). The statute does not define "identifies." This non-exhaustive, open-ended definition of "personally identifiable information" was intentional. *See* S. Rep. No. 100-599, at 11-12 ("Unlike the other definitions in this subsection, paragraph (a)(3) uses the word 'includes' to establish a minimum, but not exclusive, definition of personally identifiable information."). As two prominent privacy scholars have

noted, "[t]he virtue of [the VPPA's non-exhaustive definition of personally identifiable information] . . . is that it is open rather than closed in nature [and] can evolve and remain flexible in response to new developments." Paul M. Schwartz & Daniel J. Solove, *The PII Problem: Privacy and a New Concept of Personally Identifiable Information*, 86 N.Y.U. L. Rev. 1814, 1829 (2011).

### B. Information is personally identifiable where, as here, the recipient of a disclosure knows to whom it refers.

Where the text of a statute does not expressly or exhaustively define a term, the Supreme Court has explained that recourse to the common law is appropriate. *See Clackamas Gastroenterology Assocs. P.C. v. Wells*, 538 U.S. 440, 444-48 (2003) (looking to common law meaning of "employee" where term not defined in federal statute). Here, the common law treats a disclosure as containing personally identifiable information where the recipient of the disclosure understands to whom it is referring.

This has long been the rule in defamation cases. *See* Restatement (Second) of Torts § 564 ("A defamatory communication is made concerning the person *to whom its recipient . . . understands that it was intended to refer*.") (emphasis added). Thus, as the Restatement

14

explains:

> It is not necessary that the plaintiff be designated by name; it is enough that there is such a description or reference to him that those who hear or read [it] *reasonably understand the plaintiff to be the person intended.*

*Id*. cmt. b (emphasis added); *see also Croixland Properties Ltd. P'ship v. Corcoran*, 174 F.3d 213, 216-17 (D.C. Cir. 1999) ("[I]t suffices that the statements at issue lead the listener to conclude that the speaker is referring to the plaintiff by description, even if the plaintiff is never named or is misnamed.").

This recipient understanding test is not limited to the defamation context. For example, in *Ruzicka v. Conde Nast Publications*, 999 F.2d 1320 (8th Cir. 1993), a woman had agreed to be interviewed for a magazine article about sexual abuse on the condition that she "not be identified or identifiable" in the article. *Id*. Although the article's author used a pseudonym for the woman, the woman alleged that certain details included in the article allowed readers to identify her. *Id*. at 1322. In reversing and remanding the lower court's dismissal of the woman's promissory estoppel claim against the magazine, the Eighth Circuit held that "[t]he test is neither the intent of the author nor the apprehension of the plaintiff that the article might disclose the identity

of the plaintiff, but rather *the reasonable understanding of the recipient of the communication.*" *Id.* (emphasis added) (citations omitted).

Here, then, the question is whether Bango, the recipient of consumers' video viewing records from Cartoon Network, reasonably understood to whom Cartoon Network was referring. The answer to that question is an unqualified yes.

Ellis's Amended Complaint makes two relevant allegations, both of which must be taken as true and construed in the light most favorable to plaintiff. *See Edwards*, 602 F.3d at 1291. First, Ellis alleges that:

> [E]ach time [consumers] view video clips or television shows, the CN App sends records of such activities to an unrelated data analytics company called Bango. A complete record is sent each time that the CN App closes, along with the unique Android ID associated with the user's mobile device.

(Dkt. 23 at 6-7.) Second, Ellis alleges that "each time Cartoon Network disclosed its users' Android IDs and video viewing records to Bango, Bango was able to match the Android ID with the person's actual identity . . . ." (*Id.* at 12.) Indeed, Ellis alleges that Bango "use[s] its existing databases to 'automatically identify'" CN App users based on their Android ID number. (*Id.* at 21.) Specifically, Bango automatically

16

matches an individual's viewing history obtained from Cartoon Network

with their name, address, phone number, email address, location, and

other demographic information. (*Id.* at 10-12.) Thus, where one person

may see just a number, Bango sees an actual, identifiable person. And

because Bango therefore knows to whom each viewing record disclosed

by Cartoon Network refers, the disclosures are personally identifiable

and thus violate the VPPA.[5]

### C.    The district court erred in holding that a disclosure must, on its face, identify an individual.

The district court apparently believed that in order to constitute

personally identifiable information under the VPPA, a disclosure

must—*on its face*—identify an individual. (*See* Dkt. 35 at 7-10.) With all

due respect, that understanding is wrong.

---

[5]    While Plaintiff's allegations must be taken as true at the pleading stage, to the extent there is any question regarding Bango's ability to identify individual consumers from the information disclosed by Cartoon Network, that is in an issue to be decided following discovery, not on a motion to dismiss. *See Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1384 n.12 (11th Cir. 2010) ("[W]e do not need to reach, for Rule 12(b)(6) purposes, the legal issues of whether [defendant] disclosed enough, or the requisite type of, identifying particulars to constitute a Privacy Act violation, which in turn caused the press to identify him. There has been no discovery and those issues are better addressed once the parties have an opportunity to develop the record.").

First, information need not be understood by *everyone* as identifying a particular individual; it is enough that *some* recipient of the disclosure understands to whom the information refers. *See* Restatement (Second) of Torts § 564 cmt. b ("It is not necessary that everyone recognize the other as the person intended; it is enough that *any recipient* of the communication reasonably so understands it.") (emphasis added); *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 189 (3d Cir. 1998) ("A defamatory statement need not explicitly name a plaintiff, so long as it was understood to refer to it *by at least one third party*.") (emphasis added); *Cranberg v. Consumers Union of U.S., Inc.*, 756 F.2d 382, 389 (5th Cir. 1985) ("[I]t is not necessary that [plaintiff] be named in the article because *those who knew and were acquainted with him understood* from reading the publication that it referred to him.") (emphasis added) (citation omitted). Thus, the fact that an ordinary person may not know to whom Cartoon Network's disclosures to Bango refer is irrelevant where *Bango* knows to whom they refer.

Second, determining whether a disclosure identifies an individual *on its face* presents an unclear standard. There are a number of ways in

18

which individuals can be identified: they can be identified by name, by social security number, by photograph, by fingerprint, or by description of clothing or vehicle or behavior. Such information alone might identify an individual, but only in the sense that it refers uniquely to a single individual as opposed to more than one person. *See, e.g.*, *Identity Definition*, Merriam-Webster Online, http://www.merriam-webster.com/dictionary/identity (last visited Jan. 28, 2015) (defining identity as "the qualities, beliefs, etc., that make a particular person or group different from others"). In order to understand exactly to whom any particular piece of such information refers, however, the recipient may need to have knowledge outside the face of the disclosure or take extra steps to make the connection. *See* Restatement (Second) of Torts § 564 cmt. b ("Extrinsic facts may make it clear that a statement refers to a particular individual . . . .").

For example, even the quintessential VPPA disclosure, providing someone a list of movies rented by Robert Bork, still requires the recipient to know certain other information about Robert Bork. The name "Robert Bork" is simply a string of eleven characters, just as "12345678901" is, and is essentially meaningless without the ability to

understand and recognize the individual to whom the string of characters refers. The recipient of Robert Bork's video rental list knew exactly to which actual individual the disclosure was referring, but only because of his knowledge of the world outside the four corners of the disclosure: The disclosure was made to a self-described "noseyparker Washington reporter" during a time when a prominent Washington judge named Robert Bork was being considered for a seat on the Supreme Court. *See* Michael Dolan, *The Bork Tapes*, Washington City Paper (Sept. 25, 1987), *available at* http://www.theamericanporch.com/ bork5.htm. Further, the reporter knew exactly which video store Judge Bork frequented. *See* Michael Dolan, *The Bork Tapes Saga*, The American Porch, http://www.theamericanporch.com/bork2.htm (last visited Jan. 28, 2015). All of this outside information allowed the reporter to link the name "Robert Bork" in the rental list he obtained from the video store to the Supreme Court nominee. It was only because of the context in which the disclosure was made and the outside knowledge of the reporter that he was able to understand to which particular individual the disclosure referred. Someone without any knowledge of Robert Bork and his Supreme Court nomination may not

understand the exact same disclosure.

Likewise, Bango uses information in its possession to determine which particular individual is referenced by Cartoon Network's disclosure of that individual's Android ID number. Indeed, Bango's business is founded upon its making such connections, boasting that it "automatically identif[ies] hundreds of millions of consumers as they act across the internet." (Dkt. 23 at 11.) Here, each time Cartoon Network disclosed a user's Android ID number and video viewing records to Bango, Bango automatically matched that Android ID to the user's actual identity. (Dkt. 23 at 12, 21.)

In fact, numbers like an Android ID are actually a *better* identifier than a name, because names are not necessarily unique to particular individuals. For example, based on rough estimates of past census data, there are 61 people in the United States named Robert Bork, over 1,000 (like Plaintiff) named Mark Ellis, and over 46,000 named John Smith. *See* HowManyofMe.com, http://howmanyofme.com (enter names in search fields at top of page) (last visited Jan. 28, 2015). In contrast, there is only one person with Plaintiff-Appellant Mark Ellis's Android ID: Plaintiff-Appellant Mark Ellis. Thus, it is *more* personally

identifying to disclose—like Cartoon Network did here—that "the user with Android ID number X" viewed some programs or clips on the CN App than to disclose that "Mark Ellis" did so. Disclosing to someone that "Mark Ellis" watched particular content on the CN App does not, on its face, identify which one of the more than 1,000 Mark Ellises is being referenced.

One is reminded of the old phrase used by ballpark vendors to sell programs, "you can't tell the players without a scorecard." *See generally* Harry M. Stevens, Wikipedia, http://en.wikipedia.org/wiki/ Harry_M._Stevens (last visited Jan. 28, 2015).  To an observer in the stands, athletes may be indistinguishable from one another except for the numbers on their jerseys. But while a player's jersey number uniquely distinguishes them from all other players on their team, to hear the announcer say "number 10 just hit a home run" is meaningful only to someone who (1) already knows who number 10 is, or (2) has a scorecard. Here, Bango has the scorecard, and Cartoon Network knows it. (*See* Dkt. 23 at 6-12.)

Ultimately, Ellis alleges that Cartoon Network disclosed his Android ID number and associated viewing history to Bango, and that

Bango automatically matches his Android ID number to him. It does

not matter whether anyone else could match Cartoon Network's

disclosures to Ellis given that Bango, the recipient of the disclosures,

could and did. Like a social security number, Mark Ellis's Android ID

number uniquely refers to him. And where the recipient of a disclosure

of video viewing records knows whose records those are because they

understand a unique identification number disclosed along with those

records, there has been a disclosure of personally identifiable

information. Bango can—and automatically does so—with respect to

Android ID numbers, and Cartoon Network's disclosures therefore

violate the VPPA.[6]

---

[6]    This analysis is consistent with the only federal appellate decision
even tangentially addressing this issue, the Tenth Circuit's unpublished
opinion in *Pruitt v. Comcast Cable Holdings, LLC*, 100 F. App'x 713
(10th Cir. 2004). That case, involving the Cable Communications
Privacy Act, 47 U.S.C. § 551(e), essentially stands for the proposition
that a unique device identifier (there, a cable box number) may not be
personally identifiable *without the key to match it to actual individuals*.
*See Pruitt*, 100 F. App'x at 716-17. Here, however, Bango has the key to
(and does) match Android ID numbers to actual individuals, rendering
the information disclosed to it by Cartoon Network personally
identifiable. *See In re Hulu Privacy Litig.*, No. C 11-03764 LB, 2014 WL
1724344, *11 (N.D. Cal. Apr. 28, 2014) ("*Pruitt* stands for the
proposition that an anonymous, unique ID *without* more does not
constitute [personally identifiable information]. But it also suggests
that if an anonymous, unique ID were disclosed to a person who could

23

### III.  Other Federal Statutes and Regulations Treat Unique Identification Numbers as Personally Identifiable Information.

In addition to using common law to determine what information is personally identifiable in light of the VPPA's non-exhaustive definition of "includes," looking to other similar federal statutes is also appropriate. *See, e.g.*, *Shotz v. City of Plantation*, 344 F.3d 1161, 1168 (11th Cir. 2003) (looking to other civil rights statutes to determine meaning of the term "person" in the ADA). Here, other federal statutes and regulations that limit the collection or disclosure of information connected to unique identifying numbers—including unique device identifiers like Android ID numbers—further establish that the information disclosed by Cartoon Network was personally identifiable under the VPPA.

For example, the Children's Online Privacy Protection Act ("COPPA") prohibits the online collection of "personal information" from

---

understand it, that might constitute PII.") (emphasis in original). District court opinions addressing this issue fail to apply the recipient understanding test explained here, involve significantly different factual allegations, and reach conflicting results. *See In re Hulu*, 2014 WL 1724344; *Eichenberger v. ESPN, Inc.*, C14-463 TSZ (W.D. Wash. Nov. 24, 2014); *In re Nickelodeon Consumer Privacy Litig.*, MDL No. 2443 (SRC), 2015 WL 248334 (D.N.J. Jan. 20, 2015); *Locklear v. Dow Jones & Co.*, No. 1:14-CV-00744-MHC (N.D. Ga. Jan. 23, 2015).

children, and expressly authorizes the Federal Trade Commission ("FTC") to further define "personal information." 15 U.S.C. §§ 6501(8), 6502(a)(1). The FTC, in turn, defines "personal information" as including "[a] persistent identifier that can be used to recognize a user over time and across different Web sites or online services . . . includ[ing] . . . a processor or device serial number, *or unique device identifier*." 16 C.F.R. § 312.2 (emphasis added). Android ID numbers fall squarely within that definition.

Similarly, the Health Insurance Portability and Accountability Act ("HIPAA") prohibits the disclosure of "individually identifiable health information." 42 U.S.C. § 1320d-6(a)(3). HIPAA's implementing regulations explain that a disclosure does *not* constitute "individually identifiable health information" if certain identifiers are removed, such as "[d]evice identifiers and serial numbers." 45 C.F.R. § 164.514(b)(2)(i)(M). Thus, disclosing otherwise anonymous health information linked to an Android ID number *would* violate HIPAA.

Further, though not specifically mentioning device identifiers like Android ID numbers (as COPPA and HIPAA do), other federal statutes likewise conflict with the district court's holding that a unique

25

identification number cannot be personally identifying simply because outside information may be necessary to link the number to an actual individual. For example, the Family Educational Rights and Privacy Act ("FERPA") limits the disclosure of "personally identifiable information" contained in educational records. 20 U.S.C. § 1232g(b)(1). FERPA regulations define "personally identifiable information" as including "[a] personal identifier, such as the student's social security number [or] student number," as well as "[o]ther information that, *alone or in combination*, is linked or linkable to a specific student that would allow a reasonable person in the school community . . . to identify the student with reasonable certainty." 34 C.F.R. § 99.3 (emphasis added). These regulations thus expressly recognize that unique identifying numbers such as social security number or student number are "personally identifiable" where they can be linked by a recipient of that information to an actual individual.

Yet another federal statute allows for the disclosure of FBI-gathered DNA information for certain research purposes "if personally identifiable information is removed." 42 U.S.C. § 14132(b)(3)(D). Although neither the statute nor its implementing regulations defines

"personally identifiable information," the First Circuit has held that it includes "information that could potentially be used to link the DNA profile to the identity of its source, such as, for example, the specimen identification number." *Bororian v. Mueller*, 616 F.3d 60, 66 n.4 (1st Cir. 2010). Thus, as with FERPA, a unique identifying number is considered personally identifiable information where it "*could potentially*" be linked to an actual individual by the recipient of the information.[7]

As all these examples illustrate, a unique identifying number (like

---

[7]    It is also worth noting that the National Institute of Standards and Technology ("NIST"), the organization tasked by Congress to develop information security guidelines for all federal agencies (other than national security systems), *see* 15 U.S.C. § 278g-3(a)(3), treats unique identification numbers as personally identifiable information. *See* National Institute of Standards & Technology, *Guide to Protecting the Confidentiality of Personally Identifiable Information (PII)*, Special Publication 800-122, at 2-2 (Apr. 2010), *available at* http://csrc.nist.gov/publications/nistpubs/800-122/sp800-122.pdfs (including the following as examples of personally identifiable information: "Personal identification number, such as social security number (SSN), passport number, driver's license number, taxpayer identification number, patient identification number, and financial account or credit card number," "Asset information, such as Internet Protocol (IP) or Media Access Control (MAC) address or other host-specific persistent identifier that consistently links to a particular person," and "Information identifying personally owned property, such as vehicle registration number or title number and related information").

Android ID) is considered to be personally identifiable information across various contexts in federal law, even if some additional understanding or action is required by the recipient of such information to connect the unique number to the actual individual to whom it refers. This backdrop provides further evidence that the statute's non-exhaustive, open-ended definition of personally identifiable information covers the disclosure of Android ID numbers in conjunction with viewing history to a company who can—and automatically does—identify individuals by Android ID.

## CONCLUSION

Because Cartoon Network's disclosure of Ellis's unique Android ID number in conjunction with his video viewing history to Bango was a disclosure of personally identifiable information under the VPPA, the district court's dismissal of his Amended Class Action Complaint should be reversed. This matter should be remanded to the district court for further proceedings, reinstating Ellis's complaint or, in the alternative, allowing Ellis to amend his complaint to cure any defects identified by this Court.

28

Dated: January 30, 2015               Respectfully submitted,

**MARK ELLIS,** individually and on
behalf of all others similarly situated,

By: s/ Roger Perlstadt
*One of Plaintiff-Appellant's Attorneys*

Ryan D. Andrews
randrews@edelson.com
Roger Perlstadt
rperlstadt@edelson.com

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, IL 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiff-Appellant*

# ADDENDUM

## 18 U.S.C. § 2710 – Wrongful disclosure of video tape rental or sale records

**(a) Definitions.** — For purposes of this section —

**(1)** the term "consumer" means any renter, purchaser, or subscriber of goods or services from a video tape service provider;

**(2)** the term "ordinary course of business" means only debt collection activities, order fulfillment, request processing, and the transfer of ownership;

**(3)** the term "personally identifiable information" includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider; and

**(4)** the term "video tape service provider" means any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials, or any person or other entity to whom a disclosure is made under subparagraph (D) or (E) of subsection (b)(2), but only with respect to the information contained in the disclosure.

**(b) Video tape rental and sale records.** —

**(1)** A video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person for the relief provided in subsection (d) [*sic*].

**(2)** A video tape service provider may disclose personally identifiable information concerning any consumer —

**(A)** to the consumer;

30

**(B)** to any person with the informed, written consent (including through an electronic means using the Internet) of the consumer that —

    **(i)** is in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer;

    **(ii)** at the election of the consumer —

        **(I)** is given at the time the disclosure is sought; or

        **(II)** is given in advance for a set period of time, not to exceed 2 years or until consent is withdrawn by the consumer, whichever is sooner; and

    **(iii)** the video tape service provider has provided an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election;

**(C)** to a law enforcement agency pursuant to a warrant issued under the Federal Rules of Criminal Procedure, an equivalent State warrant, a grand jury subpoena, or a court order;

**(D)** to any person if the disclosure is solely of the names and addresses of consumers and if —

    **(i)** the video tape service provider has provided the consumer with the opportunity, in a clear and conspicuous manner, to prohibit such disclosure; and

    **(ii)** the disclosure does not identify the title, description, or subject matter of any video tapes or

31

other audio visual material; however, the subject matter of such materials may be disclosed if the disclosure is for the exclusive use of marketing goods and services directly to the consumer;

**(E)** to any person if the disclosure is incident to the ordinary course of business of the video tape service provider; or

**(F)** pursuant to a court order, in a civil proceeding upon a showing of compelling need for the information that cannot be accommodated by any other means, if —

> **(i)** the consumer is given reasonable notice, by the person seeking the disclosure, of the court proceeding relevant to the issuance of the court order; and

> **(ii)** the consumer is afforded the opportunity to appear and contest the claim of the person seeking the disclosure.

If an order is granted pursuant to subparagraph (C) or (F), the court shall impose appropriate safeguards against unauthorized disclosure.

**(3)** Court orders authorizing disclosure under subparagraph (C) shall issue only with prior notice to the consumer and only if the law enforcement agency shows that there is probable cause to believe that the records or other information sought are relevant to a legitimate law enforcement inquiry. In the case of a State government authority, such a court order shall not issue if prohibited by the law of such State. A court issuing an order pursuant to this section, on a motion made promptly by the video tape service provider, may quash or modify such order if the information or records requested are unreasonably voluminous in nature or if compliance with such order otherwise would cause an unreasonable burden on such provider.

**(c) Civil action.** —

    **(1)** Any person aggrieved by any act of a person in violation of this section may bring a civil action in a United States district court.

    **(2)** The court may award —

        **(A)** actual damages but not less than liquidated damages in an amount of $2,500;

        **(B)** punitive damages;

        **(C)** reasonable attorneys' fees and other litigation costs reasonably incurred; and

        **(D)** such other preliminary and equitable relief as the court determines to be appropriate.

    **(3)** No action may be brought under this subsection unless such action is begun within 2 years from the date of the act complained of or the date of discovery.

    **(4)** No liability shall result from lawful disclosure permitted by this section.

**(d) Personally identifiable information.** — Personally identifiable information obtained in any manner other than as provided in this section shall not be received in evidence in any trial, hearing, arbitration, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision of a State.

**(e) Destruction of old records.** — A person subject to this section shall destroy personally identifiable information as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected and there are no pending requests or orders for access to such information under

subsection (b)(2) or (c)(2) or pursuant to a court order.

**(f) Preemption.** — The provisions of this section preempt only the provisions of State or local law that require disclosure prohibited by this section.

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,619 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and 11th Cir. R. 32-4.

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, 14-point Century Schoolbook, using Microsoft Word for Mac 2011.

Dated: January 30, 2015                    s/ Roger Perlstadt

**CERTIFICATE OF SERVICE**

I hereby certify that on January 30, 2015, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Roger Perlstadt
*One of Plaintiff-Appellant's Attorneys*